# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MODESTA BENCOMO,

           Plaintiff,

v.

FORSTER & GARBUS LLP, TD BANK USA NA, and TARGET CORPORATION,

           Defendants.

Case No. 18-CV-1259-JPS

**1. INTRODUCTION**

The plaintiff, Modesta Bencomo ("Bencomo"), alleges in her amended complaint several causes of action, both on behalf of herself and on behalf of a putative class, for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act ("WCA"). (Docket #14). The alleged violations arise out of a debt collection letter she received from Forster & Garbus LLP ("Forster") regarding her delinquent Target-brand credit card account. *Id.* She has sued Forster, the debt collector who sent the letter; TD Bank USA, N.A. ("TD Bank"), who issued and held Bencomo's credit card account; and Target Corporation ("Target"), the servicer of the store-branded credit card account.

On October 23, 2018, Forster filed a motion to dismiss Bencomo's amended complaint. (Docket #18). On December 3, 2018, TD Bank and Target filed a joint motion to dismiss the amended complaint. (Docket #25). Both motions are fully briefed and ripe for adjudication. For the reasons stated below, both must be granted.

## 2. STANDARDS OF REVIEW

### 2.1 Rule 12(b)(6) Standard

The defendants have moved to dismiss Bencomo's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a viable claim for relief. To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

In reviewing Bencomo's amended complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [Plaintiff's] favor[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted). Dismissal is appropriate only "if it appears beyond doubt that the plaintiff could prove no set of facts in support of [her] claim that would entitle [her] to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016).

### 2.2 FDCPA Framework

In the Seventh Circuit, FDCPA claims are evaluated under the objective "unsophisticated consumer standard." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014). Such a person may, on one hand, be "uninformed, naive, or trusting, but on the other hand [she] does possess rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence and is capable of making basic logical deductions and inferences." *Id.* (internal quotation marks omitted). Additionally, "while the unsophisticated consumer may tend to read collection letters literally, [she] does not interpret them in a bizarre or idiosyncratic fashion." *Id.* at 274 (internal

quotation marks omitted). If not even "a significant fraction of the population would be misled" by the debt collector's letter, dismissal is required. *Id.* (quoting *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012)).

Courts in the Seventh Circuit treat the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). To frame the court's analysis of that question, the Seventh Circuit has set out three categories of § 1692e cases. *Id.* The first category includes cases in which the allegedly offensive language is plainly not misleading. *Id.* In these cases, "no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language." *Id.* The second category includes language that is not misleading or confusing on its face but has the potential to be misleading to the unsophisticated consumer. *Id.* If a case falls into this category, the plaintiff must produce "extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* The final category includes cases involving letters that are plainly deceptive or misleading, and therefore do not require any extrinsic evidence for the plaintiff to prevail. *Id.* at 801.

### 3. RELEVANT ALLEGATIONS

On or around June 12, 2018, Forster, a New York law firm engaged in the business of debt collection, mailed a letter to Bencomo regarding a debt she owed to "TD BANK USA, N.A. – CREDITOR/TARGET CREDIT CARD" (hereinafter, the "Letter"). (Docket #14-1). TD Bank issues and holds credit card accounts, including store-brand credit card accounts from

Page 3 of 19
Case 2:18-cv-01259-JPS   Filed 07/15/19   Page 3 of 19   Document 56

merchants like Target and other retail stores. Target is the servicer of Target store-branded credit card accounts.

The debt Forster was attempting to collect was a store-branded credit card account, used only for Bencomo's purchase of household goods at Target stores. Bencomo believes the Letter is a form letter, generated by a computer, with the information specific to her inserted by computer.

The Letter is printed on Forster's letterhead and identifies Forster as a "New York law firm." *Id*. The subject line indicates that the "MINIMUM AMOUNT due by July 8, 2018" was $392.00 and the "FULL BALANCE" was $2,019.38. *Id.* The first sentence of the Letter states that "[t]he above referenced account has been referred to this firm for collection. The Full Balance shown above is the full amount owed as of the date of this letter." *Id.* The Letter goes on to explain that "[t]he Minimum Amount Due shown above is an amount that if paid by the due date above will bring your account to a current status and stop collections (unless your account goes past due in the future). The account will then be returned to our client." *Id.* The Letter then provides statutorily-mandated information about Bencomo's right to dispute the validity of the debt and her timeframe for doing so, known as the validation period. *Id.* Finally, the Letter closes with information about how to pay the debt, as well as this language about Forster's role in collecting the debt:

> At this time we are only acting as a debt collector. Attorneys may act as debt collectors. Our firm will not commence a suit against you. However, if we are not able to resolve this account with you, our client may consider additional remedies to recover the balance due. . . . Please note that we are required, under federal law to advise you that we are debt collectors and any information we obtain will be used in attempting to collet this debt.

*Id.*

Bencomo alleges that at the time this Letter was mailed to her, no attorney at Forster had reviewed any documentation underlying the alleged debt. No attorney at Forster had exercised his or her professional judgment to determine that Bencomo was delinquent in her debt and a candidate for legal action. Finally, Bencomo also alleges that TD Bank and Target approved the language in Forster's debt collection letters, including the language described above.

### 4.    ANALYSIS

Counts One, Two, and Three of Bencomo's amended complaint, lodged only against Forster, allege violations of the FDCPA. Count One alleges that the Letter creates the false impression that an attorney at Forster had personally reviewed the circumstances of Becomo's debt, in violation of 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 1692f. Count Two alleges that the Letter represents to the consumer that Forster, the creditor, or some other attorney "may consider additional remedies" during the validation period without explaining how those "additional remedies" fit together with the consumer's right to dispute the debt, in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a)(4), and 1692g(b). Count Three alleges that the Letter equivocates as to whether Forster was attempting to resolve the entire account or was attempting to collect only the minimum payment, in violation 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1).

Count Four is the only claim lodged against all defendants. In it, Bencomo alleges a violation of the WCA based on the Letter giving the false impression that an attorney at Forster had personally reviewed the circumstances of Bencomo's debt. As to TD Bank and Target in particular, Bencomo alleges they authorized Forster to misrepresent its degree of

attorney involvement and approved the ambiguous language that purports to disclaim meaningful attorney involvement.

### 4.1 Count One: FDCPA Violation Based on Attorney-Involvement Disclaimer

The FDCPA is intended, as its name suggests, to "eliminate abusive debt collection practices." 15 U.S.C. § 1692(e). It contains a number of subsections which regulate certain debt collection practices. In the first Count of her amended complaint, Bencomo claims that Forster's Letter violated two of those subsections. The first is Section 1692e, which prohibits the use of false or misleading representations in the collection of a debt. *Id.* § 1692e. The second is Section 1692f, which disallows the use of "unfair or unconscionable means" in collecting debts. *Id.* § 1692f. Each of these subsections have, in turn, enumerated subparts providing specific examples of prohibited conduct. *Id.* §§ 1692e, f. Bencomo cites specifically to the subparts at §§ 1692e(3) (prohibiting the "false representation or implication that any individual is an attorney or that any communication is from an attorney") and 1692e(10) (prohibiting the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"). The subparts do not, however, limit the general application of each section's preamble.

Bencomo's claim in Count One, under all the subsections she cites, is that Forster's attorney-involvement disclaimer is confusing and ambiguous as to whether an attorney with Forster had, in fact, reviewed her file. Recall the language of Forster's disclaimer: "At this time we are only acting as a debt collector. Attorneys may act as debt collectors. Our firm will not commence a suit against you. However, if we are not able to resolve this account with you, our client may consider additional remedies." (Docket #14-1). Forster argues that this language is plainly not misleading.

Page 6 of 19
Case 2:18-cv-01259-JPS   Filed 07/15/19   Page 6 of 19   Document 56

### 4.1.1 Section 1692e

The Court will begin its analysis of Count One by determining whether Bencomo has stated a claim based on the attorney-involvement disclaimer under Section 1692e.

Attorneys may act as debt collectors without violating the FDCPA so long as they are clear about the capacity in which they are acting in the debt collection process. A collection letter misleads a debtor as to an attorney's status when the letter "appear[s] to be sent by an attorney without the attorney's having both reviewed the debtor's file and gained some knowledge about the specific debt." *Irwin v. Mascott,* 112 F. Supp. 2d 937, 949 (N.D. Cal. 2000) (citation omitted). A collection letter from an attorney that contains a disclaimer, however, does not violate the FDCPA if the least sophisticated consumer, reading the letter, would understand that the attorney had not reviewed the facts of his or her case. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361–62 (2d Cir. 2005).

The parties cite extensively to the *Greco* case from the Second Circuit, which involved an attorney-involvement disclaimer similar to the one in this case. Though not controlling, the Court finds the *Greco* analysis persuasive, as have numerous courts across the country. The consumer in that case received a letter printed on a law firm's letterhead with the firm's name on the signature block but no attorney signature. *Id*. at 361. The letter stated that the law firm represented the creditor for "collection and such action as necessary to protect our client." *Id*. The letter also contained the following disclaimer: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional

remedies to recover the balance due." *Id*. The consumer filed suit alleging that the letter violated Sections 1692e(3) and (10) of the FDCPA. *Id*. at 362.

The Second Circuit affirmed the district court's dismissal, concluding that the disclaimer adequately explained the limited extent of any attorney involvement in collecting the debt. *Id*. at 365. In doing so, the court stated that

> [A]ttorneys can participate in debt collection in any number of ways, without contravening the FDCPA, so long as their status as attorneys is not misleading. Put another way, our prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes disclaimers that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

*Id.* at 364.

In this case, the attorney-involvement disclaimer in the Letter explicitly states that Forster was only acting as a debt collector at the time of the letter's transmission. Bencomo would like this Court to require more than that; she believes the disclaimer must also include language specifically indicating that "no attorney with this firm has personally reviewed the particular circumstances of your account," as in the *Greco* letter. *Greco*, 412 F.3d at 361. But the *Greco* disclaimer language is not the exclusive means of conveying to a consumer in a non-confusing way that the law firm sending the letter is acting only as a debt collector. Forster's language is sufficient to meet this goal.

Further, like the language in *Greco,* the Letter's disclaimer is short and straightforward, and it does not refer to "claims" or "litigation," or use any other language that suggests impending court action. To the contrary,

it explicitly notes that "[o]ur firm will not commence a suit against you." (Docket #14-1). Forster concludes by stating that if "we are not able to resolve this account with you, *our client* may consider additional remedies." *Id.* (emphasis added). Finally, no attorney signature appears on the Letter. With all of this unambiguous information, the reasonable consumer would understand that Forster sent the Letter as a debt collector, not as a law firm intending to litigate.

Bencomo suggests a different way the disclaimer could be understood by a consumer. She argues that lay people do not necessarily associate the terms "law firm" and "attorneys" as meaning the same thing. Therefore, although the unsophisticated consumer might understand the first sentence of the Letter's disclaimer to mean that Forster, the law firm, was "only acting as a debt collector" and "will not commence a suit," that the attorneys at the firm, who are different from the firm itself, may have acted in a lawyerly capacity with respect to the debt, and may have reviewed the consumer's account with an eye toward litigation. The Court does not agree. This proposed interpretation of the Letter is at best idiosyncratic, and at worst frivolous. Even the unsophisticated consumer would not interpret Forster's Letter in such a "bizarre [and] idiosyncratic fashion." *Gruber*, 742 F.3d at 274.

In sum, the Court concludes that the unsophisticated consumer, reading the Letter sent by Forster in this case, would understand that Forster's role in sending the Letter was as a debt collector, not as a lawyer. The Letter is "plainly not misleading" on this point. Bencomo's Section 1692e claims in Count One will be dismissed.

Page 9 of 19
Case 2:18-cv-01259-JPS   Filed 07/15/19   Page 9 of 19   Document 56

### 4.1.2 Section 1692f

Count One also alleges a violation of Section 1692f. Bencomo does not argue that this claim is based on a different theory than is her Section 1692e claim; indeed, the allegations are the same for both sections.

As this Court explained in an order on summary judgment in an FDCPA case last year, *see Riel v. Immediate Credit Recovery Inc.*, No. 17-CV-440-JPS, 2018 WL 502659, at *2 n.3 (E.D. Wis. Jan. 22, 2018), Section 1692f is viewed as a catch-all provision for improper collection activity not addressed by other FDCPA provisions, and its "prohibition on unfairness is as vague as they come." *Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013). With that in mind, courts are reluctant to allow a Section 1692f claim to proceed on the same facts which underlie an alleged violation of a more specific provision. *See Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 989 (W.D. Wis. 2015) (collecting cases).

Bencomo's amended complaint, (Docket #14 at 22–23), and her brief in opposition to Forster's motion, (Docket #21 at 8–18), confirm that both the facts and legal theory of her Section 1692f claim stem from the allegedly misleading attorney-involvement disclaimer in the Letter, which is the sole basis of her Section 1692e claim in Count One. In light of the foregoing, and for the reasons already given with respect to her Section 1692e claims in Count One, Bencomo's Section 1692f claim must also be dismissed.

### 4.2    Count Two: FDCPA Violation Based on Threat of Litigation

In Count Two, Bencomo alleges violations of Section 1692e(5), which prohibits debt collectors from threatening to take any action that cannot legally be taken or that is not intended to be taken, and Section 1692g(b), which prohibits debt collectors from making representations that are inconsistent with the disclosure of the consumer's validation rights. She

insists that these claims are "inextricably intertwined," (Docket #21 at 19), and should therefore be analyzed together. The Court will indulge her.

Bencomo argues that Forster's Letter violates both prohibitions because it demands that Bencomo tender the "minimum amount" by July 8, 2018, which is before the end of the validation period, and then later states that "if we are not able to resolve this account with you, our client may consider additional remedies to recover the balance due." (Docket #14-1). In other words, Bencomo argues that the unsophisticated consumer would understand the representation that Forster was only acting as a debt collector "at this time" alongside the statement that the creditor "may consider additional remedies" to be a threat that legal action will be taken against her if she does not resolve the account before July 8, 2018—before the end of the validation period.

The first problem with Bencomo's theory is that the Letter expressly disavows any intention on Forster's part to sue Bencomo. The Letter states, clearly and unambiguously, that "[o]ur firm will not commence a suit against you." (Docket #14-1). Bencomo argues that this language "is easily and plausibly understood to mean that Forster will refer the account to local counsel licensed to practice in Wisconsin if the consumer does not make her payment by the payment deadline, and before the validation period has run." (Docket #21 at 21). But her reading is implausible. The Letter nowhere mentions retention of local counsel. Further, instead of leaving open the possibility that Forster was considering referring the debt to other lawyers, the Letter explicitly states that if Forster could not resolve the debt, it would give the account back to its client, who would then decide what "additional remedies" it wanted to pursue.

Bencomo also argues that the "additional remedies" language overshadows, or is inconsistent with, the disclosure of the consumer's right to dispute the debt. *See* 15 U.S.C. § 1692g(b). Because the "minimum amount" payment deadline is before the end of the validation period, and because the Letter said the creditor might consider other remedies if the account is not resolved, Bencomo believes a consumer might "wonder what good it would do him to dispute the debt if he can't stave off a lawsuit." (Docket #21 at 24) (quoting *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997)).

But this potential confusion is resolved by another paragraph in the Letter: "Your right to dispute the validity of this debt or any portion thereof, or to seek verification of the debt as stated in the above paragraph, is not affected by the minimum payment due date. If you make the minimum payment due by the due date, you may still exercise your right to dispute or request verification of indebtedness." (Docket #14-1). The Seventh Circuit has made clear that the validation period is not a grace period, and a debt collector may demand payment and pursue collection efforts within the validation period. *Durkin v. Equifax Servs., Inc.*, 406 F. 3d at 416–17 (7th Cir. 2005). Forster was well within its rights to demand payment and also inform Bencomo that the creditor may pursue "additional remedies" if the debt was not resolved, all in the same letter.

Bencomo has not plausibly alleged that the Letter falsely threatens litigation or contains language that overshadows the notice of the debtor's rights under Section 1692g. Bencomo has failed to state a claim in Count Two for violation of Sections 1692e or 1692g.[1]

---

[1]After briefing on the pending motions to dismiss concluded, Bencomo filed a motion for leave to file a second amended complaint, in which she seeks to add a new theory under Section 1692g related to the Letter's validation notice. That theory is not addressed here because it was not part of Bencomo's amended

### 4.3 Count Three: FDCPA Violation Based on Amount Due

In Count Three, Bencomo again alleges violations of Sections 1692e and 1692g, this time because the Letter allegedly equivocates as to whether Forster is attempting to resolve the account entirely, by collecting the full balance, or is attempting to collect only the minimum amount due. Both amounts are listed in the Letter, along with sentence-length descriptions of what constitutes the "minimum amount" due and the "full balance." The Letter states that if Bencomo pays the minimum amount owed, her account would then be current and would be returned to the creditor.

The FDCPA "requires that any dunning letter by a debt collector as defined by the Act state 'the amount of the debt' that the debt collector is trying to collect." *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 946–47 (7th Cir. 2004) (citing 15 U.S.C. § 1692g(a)(1); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000)). The letter must provide this information "clearly enough that the recipient is likely to understand it." *Id.* at 948 (citations omitted).

Bencomo points to two problems with the way the Letter states the amount that Forster was attempting to collect. First, the "minimum amount due" was listed as $392.00. Bencomo argues this could not have been the amount that was already past due, because the next statement she received from Target shows that the past due amount as of July 11, 2018 (a month after the Letter was sent) was also $392.00. (Docket #14-2). In other words, the "minimum amount" Forster was trying to collect with its June 12, 2018 Letter must have included both the past due amount and an amount that did not become overdue until early July 2018.

---

complaint or her brief in opposition to the instant motions. The Court will address that new proposed theory *supra.*

Page 13 of 19
Case 2:18-cv-01259-JPS   Filed 07/15/19   Page 13 of 19   Document 56

In Bencomo's view, this is a problem because a debt collector must inform the consumer of the *past due* amount. The Court is not persuaded. For support, Bencomo points to several Seventh Circuit cases that discuss the requirement that a debt collector state the "amount of the debt" in its collection letters. *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007); *Olson v. Risk Mgmt. Alternatives, Inc.*, 366 F.3d 509, 513 (7th Cir. 2004); *Chuway*, 362 F.3d at 946–47. The court in each of these cases discussed the amount the collector was seeking in relation to how that information was presented to the debtor.

Though it happened to be the case in *Barnes* that the amount the debt collector was seeking was the past due amount, it isn't clear that was also true in *Olson* and *Chuway.* In *Olson*, the letters contained both a "Balance" and an amount "Now Due," the latter of which the court described as "the portion of the balance that the creditor will accept for the time being until the next bill arrives." *Olson,* 366 F.3d at 513. In *Chuway*, the letter stated that the "balance" of the debt was $367.42; that was the entire amount the collection firm was retained to collect, and was presumably past due amounts, but the decision does not make that fact clear. *Chuway*, 362 F.3d at 947. In sum, the Court does not find that these cases stand for the proposition that "amount of the debt," as used in 15 U.S.C. § 1692g(a)(1), means exclusively past-due amounts.

The more natural reading of the holdings in *Chuway, Olson,* and *Barnes* is that a collection letter must include the amount the letter-sender has been engaged to pursue, as opposed to, for example, the total amount due to the creditor (though *Olson* teaches that also including the total principal balance does not necessarily render the letter violative of the FDCPA, *Olson*, 366 F.3d at 513).

With that framework in mind, Forster's Letter is unambiguous as to the amount of the debt. It states that the "minimum amount" due by July 8, 2018 was $392.00, and that payment of this amount to Target would bring Bencomo's account to "current status." This is entirely consistent with the July 11, 2018 Target account statement that Bencomo attached to her complaint. As of the date of Forster's letter, $392.00 was due to bring the account current (meaning it included the current installment), and as of the date of Target's next statement, that amount had not been paid and was therefore listed as "past due." The Letter is not confusing or misleading on this point.

The second problem Bencomo identifies is that, in her view, the Letter is confusing on its face as to whether Forster had been hired to collect the "full balance" or the "minimum amount." She concedes that the Letter requests that Bencomo pay the "minimum amount" in order to bring her account current, at which time Forster would return the account to the creditor. But Bencomo argues that subsequent language confuses this point by stating that the consumer can request verification of "any portion" of the debt, and by stating that the creditor may try to recover the "balance due" if Forster was unable to resolve the account.

Again, Bencomo's confusion is strained and disingenuous. The Letter accurately informs Bencomo that the balance on her account was $2,019.38, and that the minimum amount she needed to pay in order to bring her account current was $392.00. These amounts match up with the amounts listed on the next Target statement Bencomo received. Not even an unsophisticated consumer would be confused as to how much she owed based on this Letter.

Bencomo has not plausibly alleged violations of Sections 1692e and 1692g based language concerning the amount she owed on her debt. Count Three will, therefore, be dismissed.

### 4.4 WCA Claim

Count Four alleges a violation of Wis. Stat. § 427.104(1)(k) based on the Letter giving the false impression that an attorney at Forster had personally reviewed the circumstances of Bencomo's debt. This claim directly mirrors Count One; Bencomo alleges that the attorney-involvement language violates both the FDCPA and the WCA.

The WCA makes it unlawful for a debt collector "attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction [to] . . . [u]se a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney-at-law when it is not." Wis. Stat. § 427.104(1)(k). In evaluating whether a collection letter complies with the WCA, courts apply the same "unsophisticated consumer" standard used in FDCPA cases. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314–15 (Wis. 2010).

In light of this, the Court's analysis regarding Count One is sufficient to resolve Count Four as well. The Court has already concluded that the unsophisticated consumer would understand that Forster's role in sending the Letter was as a debt collector, not as a lawyer. Therefore, for the same reason that Bencomo's Section 1692e claims in Count One will be dismissed, her WCA claim must also be dismissed.

### 5.    LEAVE TO AMEND

On May 16, 2019, long after briefing on the instant motions had concluded and nine months after the case was filed, Bencomo filed a motion

for leave to file a second amended complaint. (Docket #47). She describes her proposed amendments as making no "substantive changes" from the operative amended complaint, other than adding factual allegations and adding another claim under the WCA against all defendants. *Id.* at 2. The new WCA claim is based on the same allegations underlying Bencomo's FDCPA claim in Count Three of her amended complaint.

Rule 15(a)(2) provides that after a party has amended her pleading once by right, she may amend her pleading again only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The terms of the rule, however, do not mandate that leave be granted in every case." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007).

It is simply too late in the day for Bencomo to amend her complaint once more. Under Federal Rule of Civil Procedure 1, the Court is to construe all of the rules in order to secure the "just, speedy, and inexpensive determination of every action." *See Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) ("The burden to the judicial system can justify a denial of a motion to amend 'even if the amendment would cause no hardship at all to the opposing party.'") (quoting *Tamari v. Bache & Co. S.A.L.*, 838 F.2d 904, 908 (7th Cir. 1988)). Apart from the letter that Bencomo received in discovery and attached to her proposed second amended complaint, all of Bencomo's proposed amendments could have been made in her previous pleading. The defendants, and the Court, cannot be expected to be strung along as Bencomo tries out every theory of liability she can imagine as those theories come to her mind. Therefore, leave to file a second amended complaint will be denied.

In light of that, Bencomo is free to file a new complaint if she wishes that includes any new theories she did not present in her amended complaint. Shortly after requesting leave to amend her pleading again, Bencomo notified the Court of a ruling from a California district court that found a letter virtually identical to the one in this case to violate the FDCPA. (Docket #51); *Chan v. Forster & Garbus, LLP*, No. 218CV08650SVWJEM, 2019 WL 2265135 (C.D. Cal. May 24, 2019).[2] That case involved a theory of liability that Bencomo did not allege in her amended complaint. Specifically, the plaintiff in *Chan* alleged, and the court agreed, that the letter was materially misleading as to the debtor's validation rights because it did not make clear that "if Plaintiff had made the minimum payment due, then Defendant would have stopped collections and returned the account to Target and, consequently, Defendant *would have had no obligation to respond to a debt validation request made by Plaintiff*." *Chan v. Forster & Garbus, LLP*, No. 218CV08650SVWJEM, 2019 WL 2265135 at *7 (emphasis added). This is similar to the theories Bencomo alleged in Counts Two and Three of her amended complaint, but it is distinct. This argument was not briefed by the parties and, therefore, not considered by the Court. This and any other theory of liability as to the Letter not alleged in Bencomo's amended complaint may be lodged in a new case.

6. **CONCLUSION**

For the reasons discussed herein, the Court finds that Bencomo's amended complaint fails to state a claim under either the FDCPA or the WCA. The defendants' motions to dismiss the amended complaint will be

---

[2]Because the Court is dismissing Bencomo's amended complaint without leave to amend, her motion asking the Court to consider the California case is moot. The motion will be denied as such.

Page 18 of 19
Case 2:18-cv-01259-JPS   Filed 07/15/19   Page 18 of 19   Document 56

granted. Bencomo's motion for leave to file a second amended complaint will be denied.

Finally, all remaining pending motions not addressed in this Order, except for Bencomo's motion to seal, (Docket #50), will be denied as moot. (Docket #30, #32, #38, #51, and #55). The motion to seal will be granted.

Accordingly,

**IT IS ORDERED** that Defendant Forster & Garbus LLP's motion to dismiss Plaintiff's amended complaint (Docket #18) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendants TD Bank USA, N.A. and Target Corporation's motion to dismiss Plaintiff's amended complaint (Docket #25) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a second amended complaint (Docket #47) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff's motion to seal (Docket #50) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the parties' remaining pending motions (Docket #30, #32, #38, #51, and #55) be and the same are hereby **DENIED as moot;** and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of July, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge